IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, | § § § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 1:11-cv-00144 |
| ILLINOIS NATIONAL INSURANCE COMPANY, | § § § § | |
| Defendant. | § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW,** Twin City Fire Insurance Company ("Twin City"), Plaintiff in the above-styled and numbered cause, complaining of Illinois National Insurance Company ("Illinois National"), and seeking a declaration of the respective rights and liabilities of the parties under and pursuant to a certain insurance contract issued by Twin City to Capital Excavation Company ("CEC"), and for such would show unto the Court as follows:

### I.

### THE PARTIES

1. Twin City Fire Insurance Company is a foreign corporation organized under the laws of the State of Indiana, with its principal place of business in Hartford, Connecticut.

2. Illinois National Insurance Company is a foreign corporation organized under the laws of the State of Illinois, with its principal place of business at 175 Water Street, New York, New York 10038. Service of process on Illinois National may be accomplished by serving its

registered agent, Corporation Service Co., at the following address: 701 Brazos Street, Suite 1050, Austin, Texas 78701.

## II.

## JURISDICTION

3.     This Court has jurisdiction under Title 28, U.S.C.A. § 1332 since this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000.

4.     This is an action for a declaratory judgment in a case of actual controversy pursuant to § 2201 of the U.S. Judicial Code (28 U.S.C.A. § 2201) and is brought to determine the respective rights and liabilities of the parties under and pursuant to a certain insurance contract issued by Twin City to CEC, which will be more fully hereinbelow set forth.

## III.

## VENUE

5.     Venue is proper in this Court under 28 U.S.C.A. § 1391(a) because the Western District of Texas is where a substantial part of the events giving rise to this claim occurred (i.e., the underlying actions occurred in this judicial district and the policy in question was issued to CEC in this judicial district) and Illinois National is subject to personal jurisdiction in the Western District of Texas at the time this action is commenced.

## IV.

## FACTUAL BACKGROUND AND REQUESTED RELIEF

**A.     The Twin City Policy**

6.     Twin City issued its Policy No. 46 C QT1633 (the "Primary Policy") to CEC for the period of April 1, 2007, through April 1, 2008.  The relevant coverage part is the

**Commercial General Liability Coverage Form**, Form No. HG 00 01 06 05.

7. Through the **Commercial General Liability Coverage Form**, Hartford agreed, subject to the limitations, terms and conditions thereof, to pay those sums (up to the applicable limit) which CEC became legally obligated to pay because of, among other things, "bodily injury" "caused by an 'occurrence.'" The term "occurrence" was thereafter defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

8. Twin City had the right to investigate, defend and settle an "occurrence," or suit resulting therefrom:

> " [b]ut . . . [t]he amount [Twin City] will pay for damages is limited as described in Section III – Limits of Insurance; and … [Twin City's] right and duty to defend ends when [Twin City has] used up the applicable limit of insurance"

in the payment of covered claims.

9. The "applicable limit of insurance" is set out in Section 3 of the **Commercial General Liability Coverage Part – Declarations** [Form HS 00 22 06 05], which is titled "Limits of Insurance." There the Primary Policy provides for an "Each Occurrence" limit of liability of $2,000,000, with an aggregate limit of $4,000,000.

**B. The Illinois National Policy**

10. Illinois National issued its Policy No. BE 7227286 (the "Umbrella Policy") to CEC for the period of April 1, 2007, through April 1, 2008. The relevant coverage part is titled **Umbrella Prime – Commercial Umbrella Liability Policy With CrisisResponse** (sic) ("**Umbrella Prime**"), Form 80517 (10/04). .

11. Through the **Umbrella Prime** form, Illinois National agreed, subject to the limitations, terms and conditions thereof, to pay "those sums in excess of the **Retained Limit**

that [CEC] becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury** . . ..”

12. In the context of this matter, the term "**Retained Limit**" is defined by the Umbrella Policy to mean the applicable limit of insurance as provided for in the Primary Policy.

## C. The Project

13. CEC was the road contractor for a "notch and widen" project on SH 71 in Travis County, Texas. To perform its work, CEC removed a portion of the pavement and substrate in the outside lane of the existing highway and then widened the roadway by building it out and up per the plans and specifications given to CEC by the Texas Department of Transportation.

## D. The Underlying Actions

14. After CEC completed its work on the roadway in March of 2007, and all lanes of traffic on SH 71 were open for use, multiple automobile wrecks occurred within the boundaries of what had been the project when drivers lost control because of hydroplaning. Three of these wrecks, the ones that occurred on June 20, 2007, June 25, 2007 and July 14, 2007, resulted in three separate suits being filed against CEC in the courts of Travis County, Texas (the "Travis County Actions").

15. In each of the Travis County Actions, it was alleged that CEC was responsible for the wreck in question due to a condition that CEC created during the construction of the project. Specifically, it was alleged that the roadway CEC added to the existing SH 71 road had a cross slope that did not "match" the existing cross slope—creating a condition which allowed water to collect and flow down the hill in the area of new construction until the designed drainage patterns caused all flowing water to eventually flow into the inside lane of traffic and eventually across the roadway.

### E.  The Controversy

16. All of the claims asserted in the Travis County Actions against insureds under the Primary Policy have now been settled, with the exception of one. In contributing to settle these claims, Twin City has paid substantially all of its $2,000,000 per "occurrence" limit. Further, in connection with the only unsettled claim, it has offered to pay the remainder of its $2,000,000 per "occurrence" limit. This offer, however, has been rejected by the remaining claimant.

17. The majority of jurisdictions, including Texas, apply the "cause" theory to determine the number of occurrences for purposes of determining insurance coverage. This theory states that as long as the damage complained of stems from one proximate cause, there is but one single occurrence. Thus, the number of occurrences is determined by examining the causative acts, not the number of injuries or number of claimants. As the Fifth Circuit has noted:

> " . . . a single occurrence may result in multiple injuries to multiple parties over a period of time*; . . .."*

*H.E.B. Grocery Co. v National Union Fire Ins. Co.*, 150 F.3d 526, 534 (5th Cir. 1998) (quoting from *Home Indem. Co. v. City of Mobile,* 749 F.2d 659, 662 (11th Cir.1984).

18. Here, we are dealing with a single cause (the condition of the road as constructed by CEC) that allegedly resulted in multiple accidents. As such, there is only one "occurrence."

19. Because the Travis County Actions are all the result of a single occurrence, Twin City's limit of liability for all of the claims asserted against its insureds in those Actions is $2,000,000. Twin City has advised Illinois National of this fact, but Illinois National has advised it does not agree. Rather, Illinois National is contending that the Travis County Actions involve multiple "occurrences," meaning that Twin City's limit of liability for all of the claims asserted against its insureds in those Actions is $4,000,000.

## F. Requested Relief

20.     In light of the above, and in order to resolve the controversy that exists between Twin City and Illinois National, Twin City seeks the relief requested below.

WHEREFORE, Twin City prays that the Court adjudicate and declare that:

1. The Travis County Actions all arise from a single "occurrence," as that term is defined by the Primary Policy;

2. Twin City's applicable limit of liability for all of the Travis County Actions combined is $2,000,000;

3. Hartford is entitled to recover its costs and disbursements herein from Illinois National; and

4. Hartford be awarded such other and further relief as may be proper.

Respectfully submitted,

 /s/James H. Moody, III
JAMES H. MOODY, III
State Bar No. 14307400

**QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 442-5456 (Telecopy)

**ATTORNEY FOR TWIN CITY
FIRE INSURANCE COMPANY**
